# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**STEPHEN P. DZIADIK**,

      Plaintiff,

v.                                       Case No. 8:24-cv-2789-WFJ-TGW

**PINELLAS COUNTY SHERIFF'S
DEPARTMENT**, **PINELLAS COUNTY
JAIL**, **TARPON SPRINGS POLICE
DEPARTMENT**, and **OFFICER
TAUREEN MATHIS**,

      Defendants.

_____/

## <u>ORDER</u>

Before the Court are Defendants Taurean[1] Mathis, Pinellas County Jail, and Pinellas County Sheriff's Department's motions to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted, brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkts. 13, 17. Plaintiff, proceeding *pro se*, has filed a response. Dkt. 22. For the reasons explained below, Plaintiff's complaint is due to be dismissed without prejudice.

---

[1] Officer Mathis' first name is misspelled in Plaintiff's complaint.

1

## BACKGROUND

Plaintiff brings this action against Defendants pursuant to 42 U.S.C. § 1983 for violations of his civil rights. Dkt. 1 at 1–3. Specifically, Plaintiff alleges that "[his] right to Due Process was violated multiple times[,] [e]xcessive force was used, . . . [and] [e]lectric 'Stun Cuffs' were used in an attempt to violate [his] freedom of speech[.]" *Id.* at 3.

 The events giving rise to this lawsuit began near Plaintiff's residence in Tarpon Springs. *Id.* at 4. Plaintiff alleges that he injured his knee and called EMS for help at approximately 11 p.m. on November 20, 2023. *Id.* EMS never responded, but, instead, Tarpon Springs police officers arrived on the scene. Dkts. 1 at 4; 1-1 at 2. They shined their lights on Plaintiff, who became intimidated and removed his shirt and unbuttoned his pants to show he was unarmed. Dkt. 1-1 at 2. The officers' flashlights created a glare in Plaintiff's eyeglasses, causing him to remove them and toss them aside. *Id.* The glasses struck an officer in the leg, at which point police took Plaintiff into custody. Dkts. 1 at 4; 1-1 at 2.

Plaintiff alleges police took him to the Pinellas County Jail, where he experienced extreme adverse treatment until his release to the hospital at 2:30 p.m. on November 22, 2023. Dkt. 1 at 4. During his transport to the jail, an officer advised Plaintiff that he was being "Baker Acted" rather than arrested. Dkt. 1-1 at 2. Upon arrival, police seemingly placed Plaintiff first in a wheelchair and then in a more

restrictive "Devil's Chair." *Id.* at 3. Two straps tightened across his chest. *Id.* Plaintiff alleges he "was restrained to a point where [he] could barely breathe." *Id.* He wore ankle shackles, handcuffs on his wrists behind his back, and a curtain-like covering around his face and neck. *Id.* Police wheeled him into "a solitary cell" and left him unchecked for "hours." *Id.* Plaintiff alleges he could not feel his hands due to the tight handcuffs. *Id.*

At some point thereafter, police placed Plaintiff into another "solitary cell," where he was unclothed and without running water until police restrained him in the "Devil's Chair" again. *Id.* Police initially gave Plaintiff a paper gown, which perspiration on his body dissolved into pieces. *Id.* Plaintiff estimates he was in this cell for twenty-four to thirty-six hours and "harassed, intimidated and threatened" throughout the experience. *Id.* He alleges that a Pinellas County police officer named Cordona threatened to kill him, and when he informed supervising officers of this threat, Officer Cordona led a group of four to five officers that converged on Plaintiff. *Id.* The officers punched and tased him, and returned him to the "Devil's Chair." *Id.* He alleges that a "bizarre interrogation" occurred at this point, wherein Officers Mathis and Cordona feigned "pleading for life and help" in an adjacent cell. *Id.* Plaintiff believes this was an "attempted coercion of [him]." *Id.*

During this second time in the "Devil's Chair," police restrained Plaintiff's hands with "Stun Cuffs." *Id.* He alleges that he was shocked repeatedly and injected

3

with Fentanyl. *Id.* at 4. The shocks came "whenever [he] said things they didn't want [him] to say." Dkt. 1 at 4. For example, Plaintiff appears to allege that officers activated the "Stun Cuffs" when he spoke of Officers Mathis and Cordona over-tightening the chest straps on the "Devil's Chair." *Id.*

There are five allegations that involve or mention Officer Mathis specifically:

(1) It is not entirely clear, but, as mentioned above, it appears Plaintiff alleges that unidentified officers shocked him when he spoke of Officer Mathis tightening the chest straps on the restraining chair. *Id.*

(2) Plaintiff "overheard that Officer Mathis was making decisions by officers talking at the scene." Dkt. 1-1 at 3. It is not clear to which scene or decisions this statement refers.

(3) "Officer Mathis admitted on video later 'I only did it because you wouldn't leave my officers alone in the streets Steve.'" *Id.*

(4) Officer Mathis allegedly engaged in the fake "pleading for life and help" that occurred in the neighboring cell. *Id.*

(5) Plaintiff alleges he "was shocked if [he] even said the name, 'Taureen Mathis.'" *Id.* at 4.

Ultimately, this incident concluded with officers taking Plaintiff's fingerprints and informing him of two charges against him: battery on a law enforcement officer and resisting arrest with violence. *Id.*

Following this incident, Plaintiff alleges that Pinellas County Sheriff's Office repeatedly "Baker Acted" him for social media posts regarding the "Stun Cuffs" and mistreatment he experienced at the Pinellas County Jail. *Id.* at 5. He states he was "Baker Acted" nine times in six months, after never previously experiencing psychiatric disturbances in his life. *Id.* He believes the officers involved did not want information about the "Stun Cuffs" disseminated. *Id.*

As a result of the November 20–22 detention, Plaintiff claims injuries to his head, neck, back, knees, hips, and the nerves supplying his hands. Dkt. 1 at 5. His career as a physician assistant in heart, lung, and vascular surgery has ended. *Id.* He has undergone treatment for depression, anxiety, and PTSD associated with the event. *Id.* As relief, Plaintiff seeks "to bring truth and justice" to the situation, and "would like the defendants to take responsibility for the irreparable damage this situation has caused to [his] personal and professional life." *Id.* He requests Defendants support his petition to declare "Stun Cuffs" unconstitutional. *Id.* Finally, Plaintiffs seeks $5,000,000 in actual and punitive damages, accounting for his lost income for the next twenty years now that his injuries prevent him from working. *Id.*

## LEGAL STANDARD

As an initial matter, *pro se* litigants' filings are liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). This liberal

reading, however, does not exempt *pro se* plaintiffs from the pleading standards set forth in the Federal Rules of Civil Procedure or the Middle District of Florida Local Rules. *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005); *Caton v. Louis*, No. 2:07-CV-32-FtM-99SPC, 2007 WL 9718731, at \*1 (M.D. Fla. Feb. 21, 2007). Moreover, a district court may not serve as a *pro se* plaintiff's "*de facto* counsel" or "rewrite an otherwise deficient pleading . . . ." *See GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). But where more specific allegations would remedy the pleading problems in a *pro se* plaintiff's complaint, the district court must dismiss with leave to amend. *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1292 (11th Cir. 2018) (citing *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988)).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in a light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). The pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (cleaned up) (citing *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

The Court need not accept as true bare legal conclusions offered in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, a claim may be dismissed if there is a dispositive legal issue that precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

## DISCUSSION

### I.   Officer Mathis' Motion to Dismiss

Officer Mathis argues, and the Court agrees, that, as pled, the complaint fails to state a claim against him. Plaintiff first mentions Officer Mathis' name when he alleges the "abuse" and "Stun Cuff" shocks inflicted by other, unnamed officers. Dkt. 1 at 4. He states that these unnamed officers shocked him when he spoke about Officer Mathis. Dkts. 1 at 4; 1-1 at 4. This allegation, therefore, relates to those officers' conduct rather than Officer Mathis' conduct. To the extent Plaintiff intends to also allege that Officer Mathis engaged in excessive force and/or due process violations when he strapped Plaintiff into the "Devil's Chair" or at any other time, Plaintiff may clarify that in an amended complaint he may file. For now, Officer Mathis is not on fair notice of the claims against him and the grounds upon which they rest. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015). Officer Mathis should be prepared to respond to the substance of these claims in any subsequent motion to dismiss.

Plaintiff's other allegations likewise fail to inform Officer Mathis of the claims against him or the grounds upon which they rest. *See id.* As for Plaintiff's allegation that he "overheard that Officer Mathis was making decisions by officers talking at the scene," Dkt. 1-1 at 3, it is unclear what decisions or scene Officer Mathis commanded that allegedly violated Plaintiff's constitutional rights. Similarly, the legal significance of Plaintiff's remaining allegations is unclear. Specifically, the allegations that Officer Mathis admitted "[he] only did it because [Plaintiff] wouldn't leave [his] officers alone in the streets []," and that Officer Mathis engaged in some kind of maltreatment reenactment, Dkt. 1-1 at 3, are not clearly connected with any asserted legal claim. To the extent these are actionable allegations, Plaintiff is free to supply more factual and legal specificity to these claims in an amended complaint to notify Officer Mathis of his relevant conduct and the legal claims arising from that conduct. *See Weiland*, 792 F.3d at 1322–23.

Finally, Plaintiff sues Officer Mathis in both his individual and official capacities, but the claim against Officer Mathis in his official capacity is due to be dismissed. When an officer is sued under Section 1983, a claim against that individual in their official capacity is equivalent to a claim against the entity that employs them. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Plaintiff identifies Officer Mathis as a sergeant at the Tarpon Springs Police Department. Dkt. 1 at 3. Plaintiff also names the Tarpon Springs Police Department

as a Defendant. *Id.* Because Plaintiff attempts to assert a claim against Officer Mathis' employer, there is no need to also sue Officer Mathis in his official capacity. *Busby*, 931 F.2d at 776. This claim against him in his official capacity is due to be dismissed.

## II.     Pinellas County Jail and Pinellas County Sheriff's Department's Motion to Dismiss

Pinellas County Jail and Pinellas County Sheriff's Department argue, and the Court agrees, that they are the incorrect Defendants to sue in this case. The "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 17(b)). In Florida, a "county jail" or a "sheriff's department" is not a legal entity subject to suit. *See, e.g.*, *id.* ("Sheriff's departments and police departments are not usually considered legal entities subject to suit[.]"); *Maldonado v. Baker Cnty. Sheriff's Off.*, 513 F. Supp. 3d 1339, 1348 (M.D. Fla. 2021) ("[A] sheriff's office, jail, or detention center is not an entity subject to suit under Florida law."); *Mann v. Hillsborough Cnty. Sheriff's Off.*, 946 F. Supp. 962, 970–71 (M.D. Fla. 1996); *Bain v. Manatee Cnty. Jail*, No. 8:23-CV-828-CEH-AAS, 2023 WL 3158283, at *1 (M.D. Fla. Apr. 28, 2023); *Jones v. Collier Cnty. Sheriff's Dep't*, No. 95-232-CIV-FTM-17D, 1996 WL 172989, at *2 (M.D. Fla. Apr. 9, 1996). Because Pinellas County Jail and Pinellas County Sheriff's Department are not legal entities subject to suit, they and the claims against them are

due to be dismissed from this action. If Plaintiff is able, he may assert claims against the correct entities in an amended complaint.

The Court notes that, while Tarpon Springs Police Department has yet to appear in this action, it is also not a proper party in this suit. *See, e.g.*, *Pierre v. Schlemmer*, 932 F. Supp. 278, 279–80 (M.D. Fla. 1996) (finding Bradenton Police Department was not a proper party in Section 1983 lawsuit). If Plaintiff chooses, he may assert claims against the correct entity in an amended complaint.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

1) Defendant Taureen Mathis' motion to dismiss, Dkt. 13, is granted.

2) Defendants Pinellas County Jail and Pinellas County Sheriff's Department's motion to dismiss, Dkt. 17, is granted.

3) The Clerk is directed to terminate Pinellas County Sheriff's Department, Pinellas County Jail, and Tarpon Springs Police Department as Defendants in this case.

4) Plaintiff, within 21 days, may file an amended complaint against Defendant Taureen Mathis in his individual capacity, and against Defendants properly subject to suit in place of Pinellas County Sheriff's Department, Pinellas County Jail, and Tarpon Springs Police Department.

**DONE AND ORDERED** in Tampa, Florida, on April 16, 2025.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**<u>COPIES FURNISHED TO</u>**:
Counsel of Record
Plaintiff, *pro se*

11